THE PEOPLE OF THE STATE OF NEW YORK ex rel. SIDNEY DEMING, Relator, *v.* CHAUNCEY WILLIAMS, Sheriff of Oneida County, New York, Respondent.

Supreme Court, Oneida County, December 30, 1936.

*Charles L. DeAngelis,* for the relator.

*John J. McGinty, District Attorney [Joseph A. Page, Assistant District Attorney,* of counsel], for the respondent.

ZOLLER, J. Sidney Deming, the relator herein, was arrested pursuant to an order granted on October 11, 1935, by the special county judge of Oneida county, in proceedings had before him in Children's Court of Oneida county, wherein it was "Ordered, adjudged and decreed that the said respondent, Sidney C. Deming, be and he hereby is commited to the Oneida County Jail for thirty (30) days, unless sooner discharged by the Court." Thereupon said respondent, the relator herein, petitioned this court on October 11, 1935, for a writ of habeas corpus, which was duly granted and made returnable on the afternoon of said October 11, 1935, at two o'clock. Said relator was duly produced in court at the said time and by the court was paroled in his attorney's custody and the matter was adjourned until the following week, at which time the relator and the respondent appeared by counsel. After hearing the argument of counsel, the matter was held for disposition and relator's parole in his attorney's custody was continued.

In his petition for a writ of habeas corpus relator alleges that his imprisonment and restraint is illegal in that "the Children's Court of Oneida County or its Judge has no jurisdiction in the above matter. That there is no power in the Children's Court to commit the petitioner for failure to support his stepchildren."

The relator was married on August 4, 1934, to one Gladys Smith in the city of Utica, N. Y. He was a widower and she was a widow. He had two children, one over twenty-one years of age and married, toward whose support he was contributing, and one of school age, whom he was supporting. She had five children living with her, one of whom at the time of her said marriage to relator was about eighteen years of age and four of whom were under sixteen years

of age. There is no claim made here that, at the time of their marriage, Deming did not have knowledge of that fact. On the other hand, there is no claim here that his wife did not know at the time of their marriage that her husband was supporting or contributing to the support of his two children.

Soon after his marriage on August 4, 1934, Deming was obliged to leave the city of Utica and take up, at least temporarily, the duties of his employment in the city of Cohoes. He took with him his boy, who was about fourteen years of age, and they lived together in the city of Cohoes. His wife and her five children remained in Utica. Deming was able to return to Utica infrequently for week-end visits. He sent money to her, however, and from a letter written by him to the special county judge of Oneida county on November 12, 1934, a copy of which letter was submitted by counsel for the respondent herein, it appears that he was sending to his wife $30 or $35 a month out of a monthly salary of $175, which was reduced at the time to about $122.50, because of the several deductions mentioned in his letter. Evidently, his wife, living with her five children at Utica, was not satisfied with any such monthly payments, because in his said letter of November 12, 1934, Deming advised the special county judge of Oneida county that he had just received a summons to appear in the Oneida County Children's Court the following day in the matter of " Sidney C. Deming, Respondent, and Sherman, June, Audrey and Granville Smith, children." This letter is very interesting. In it Mr. Deming expressed a love for his wife and a desire " to maintain and support this lady and her family until it hurts if she would just be patient." He explained in detail his financial condition and referred to the bills which he owed by reason of his first wife's illness and death and a garnishee execution which had been issued against his salary, and promised the special county judge that he would be in Utica the following Friday and would then take the matter up with him. Evidently this was done and Deming discussed the situation with the judge informally and without counsel and agreed to pay twenty dollars every two weeks for the support of his wife and her children.

It appears that about two weeks later and on December 18, 1934, and without further appearance by or notice to Deming, the court issued an order directing him to pay thirty dollars every two weeks for the support of Mrs. Deming and her children. Some little time later a motion was made in behalf of Deming in said Children's Court of Oneida county to vacate the order granted on December 18, 1934, on four specified grounds, namely:

" 1. The proceeding of December 18th, 1934, was improperly brought by Gladys Smith Deming, and that said proceeding could only have been brought by a Public Welfare Officer.

" 2. That under said proceeding, the Children's Court was without jurisdiction to compel a stepfather to pay for the support of stepchildren.

" 3. That the Children's Court had no jurisdiction to order or direct a stepfather to pay for the support of a stepchild whom he had not legally adopted.

" 4. That the respondent was not of sufficient financial ability to be charged with the support of any stepchildren."

This motion was denied, but by an order of the court granted on July 9, 1935, the amount which he was directed to pay was reduced from thirty dollars to twenty dollars every two weeks. Deming evidently managed to make these reduced payments regularly and promptly until October, when he failed to make the payment due on October 8, 1935. This failure resulted in his arrest upon a warrant of the Children's Court, and on the eleventh of October the court granted the order above mentioned committing him to the Oneida County Jail for thirty days, whereupon, as already stated, Deming petitioned this court for a writ of habeas corpus.

It appears that the reduction from thirty dollars to twenty dollars which Deming was directed to pay every two weeks for the support of his wife and his four stepchildren under sixteen years of age, was made after a hearing in Children's Court upon the peitition of Deming for a modification of the order of December 18, 1934. This proceeding instituted by Deming followed the refusal of the court to vacate and set aside said order of December eighteenth.

At common law a parent was obliged to support his minor child. However, a husband was under no legal obligation to support the children of his wife by a former marriage (*Williams* v. *Hutchinson*, 3 N. Y. 312, 317), and because there was no kinship or blood relationship, he was under no moral obligation to maintain them.

On January 1, 1930, our present Public Welfare Law took effect. This law, enacted by chapter 565 of the Laws of 1929, took the place of the Poor Law, which was repealed by the same chapter. Section 125 of the Public Welfare Law reads as follows: " The husband, wife, father, mother, grandparent, child or grandchild of a recipient of public relief or of a person liable to become in need of public relief shall, if of sufficient ability, be responsible for the support of such person. Step-parents shall in like manner be responsible for the support of minor step-children."

The Poor Law, which was repealed by the Public Welfare Law, did not contain the last sentence, which refers to the responsibility of stepparents for the support of minor stepchildren. This section should be strictly construed. (Op. Atty.-Gen. [1934], 51 State Dept. Rep. 284.) In that opinion the Attorney-General, writing to the public welfare officer at Ossining, N. Y., said: " I do not believe a step-father is liable for the hospital expenses of a step-child who has reached its majority. Section 125 of the Public Welfare Law goes far beyond the old common law liability in requiring various relatives to support their kin and therefore the section must be strictly construed. The last sentence of section 125 provides that ' step-parents shall in like manner be responsible for the support of minor stepchildren.' I think the courts would require a strict construction of this provision and that the use of the words ' minor stepchildren ' would be interpreted to definitely eliminate any liability on the part of a step-parent to support a step-child who is not a minor."

We are not concerned here with the question of the support of stepchildren who are not minors, but the Attorney-General states very clearly the well-established law that any statute in derogation of the common law must be strictly construed. Therefore, in order for a stepparent to be responsible for the support of a minor stepchild, it must be established that such stepchild is the recipient of public relief, or liable to become in need of public relief, and that the stepparent is of sufficient ability to provide necessary support. Judge THOMPSON, writing for the court in the case of *People (Complaint of Coleman)* v. *Fermoile* (236 App. Div. 388 [4th Dept.]), says: " Section 125 of the Public Welfare Law does not impose an absolute duty on a stepfather to support his minor stepchild. It only requires him to furnish such support if he is of sufficient ability to do so, and the child is, or is liable to become, a public charge. The section is in derogation of the common law and should be strictly construed. * * * The record fails to show the existence of the facts necessary to establish the responsibility of complainant's husband for the support of his wife's child under the provisions of section 125 of the Public Welfare Law above mentioned."

Sections 126, 127 and 128 of the Public Welfare Law, being those which immediately follow section 125, empower a public welfare official " to bring proceedings in a court of competent jurisdiction to compel any person liable by law for support to contribute to the support of any person cared for at public expense, or person liable to become so dependent," and specify in detail the manner

in which those who are made responsible for support by the provisions of section 125 shall be made to discharge such responsibility.

It is the contention of counsel for relator that the procedure prescribed in said sections 126, 127 and 128 was not followed or adopted here at the time Deming was served with a summons issued out of the Children's Court of Oneida county, directing him to appear before the special county judge on November 13, 1934, which resulted in Deming's appearing in said Children's Court without counsel and, after informally talking the matter over, agreeing to pay twenty dollars every two weeks for the support of his wife and her children. In other words, it is counsel's contention that this did not give the Children's Court jurisdiction, even though Deming himself appeared in response to the summons issued out of Children's Court and consented, under the circumstances stated, to provide support for his wife and his stepchildren. Certainly his letter of November 12, 1934, addressed to the special county judge of Oneida county would not warrant the conclusion that he had sufficient ability to pay sixty dollars a month for the support of his wife and his stepchildren, as provided in the order granted on December 18, 1934, without further appearance on his part or any notice to him. It seems to me that simply because Deming did respond to the summons issued out of Children's Court and did appear without counsel and discussed informally his willingness to provide for his wife and stepchildren, the Children's Court did not, solely because of those circumstances, acquire jurisdiction over him. (*People* v. *Guidici*, 100 N. Y. 503, 508.)

The jurisdiction which counsel for respondent claims the Children's Court had over Deming was acquired, it is contended, by virtue of the provisions of subdivision 2 of section 6 of the Children's Court Act, being chapter 547 of the Laws of 1922, as amended. It seems to me that the jurisdiction of the Children's Court in each county is clearly defined in said section and consists of the authority to inquire into, hear and determine the liability of " any person  *  *  *  who wilfully fails to provide for the proper maintenance of his wife or child, or of a mother who  *  *  *  wilfully fails to provide for proper maintenance or care of her child and who has gone away and left her children without any care; of any person charged with abandonment or non-support of a wife or child; or of any parent of any child committed  *  *  *  or any other person required by law to support or maintain such a child."

I fail to see where there is any suggestion of jurisdiction, under the circumstances here, to inquire into, hear and determine the liability of Deming under any one of said four classifications. The nearest would be the third classification which refers to the abandon-

ment or non-support of a child. Surely, none of Deming's minor stepchildren was abandoned within the definition of an abandoned child, as contained in subdivision 5 of section 2 of the Children's Court Act. Nor is it fair or reasonable to conclude that any one of his said stepchildren received no support from him.

In any event, it is my opinion that the jurisdiction created and defined by said subdivision 2 of section 6 applies only to cases and conditions arising out of the relationship of parent and child and has no application to the relationship of stepparent and stepchild. This latter situation is taken care of by the last sentence of the first paragraph in said section 125 of the Public Welfare Law and the procedure to bring about the discharge of the responsibility for the support of a stepchild is clearly and definitely prescribed in said sections 126, 127 and 128 of said Public Welfare Law. This statute having prescribed the manner in which it is to be performed, the statutory remedy is the only one to be resorted to. (*Edwards* v. *Davis*, 16 Johns. 281, 285.)

Although responsibility for the support and maintenance of relatives has been extended by statutory law and, as we have seen, stepparents are now bound to support their minor stepchildren, it seems to me that the right to compel a stepparent to contribute to the support of his or her stepchild is vested in public welfare officials, and that neither a husband nor a wife as yet is vested with or possesses any such right or power. The case of *Matter of Kane* v. *Necci* (245 App. Div. 1), submitted by counsel for respondent, is certainly distinguishable and is not controlling here.

My conclusion, therefore, is that the Children's Court of Oneida county was without power or jurisdiction to grant the order of December 18, 1934, or the subsequent order of July 9, 1935. The relator herein is discharged from custody.

An order may be submitted accordingly.